**MINNESOTA PUBLIC INTEREST RESEARCH GROUP, complainant, Relator,**

v.

**NORTHERN STATES POWER COMPANY, Respondent.**

No. C1–84–1330.

Court of Appeals of Minnesota.

Jan. 15, 1985.

Carla Kjellberg, Minneapolis, for relator.

Raymond A. Haik, David M. Sparby, Northern States Power Co., Samuel L. Hanson, Briggs & Morgan, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Allen E. Giles, Sp. Asst. Atty. Gen., St. Paul, for P.U.C.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

Complainant-relator appeals from the Minnesota Public Utilities Commission's order dismissing its complaint and denying its motion for reconsideration. We affirm.

## FACTS

The Minnesota Public Interest Research Group (MPIRG) filed a complaint on behalf of 50 electric utility customers against Northern States Power Company (NSP). The complaint alleged that the rates established for NSP by the Minnesota Public Utilities Commission (PUC) in its most recent general ratemaking proceeding had become excessive and unreasonable, and consumers consequently were being overcharged in violation of Minn.Stat. § 216B.03 (Supp.1983). MPIRG requested that the PUC issue an order reducing NSP's authorized revenue requirement for retail electric rates.

The PUC considered MPIRG's complaint, including written argument, and then issued an order requiring the Department of Public Service (DPS) to investigate the reasonableness of NSP's rates and report within 90 days. The DPS submitted a report in January 1984. The PUC then requested an updated report based upon NSP's actual electric and gas revenues in Minnesota for the last three months of 1983. In May 1984 the PUC dismissed

MPIRG's complaint without a hearing and later denied MPIRG's motion for reconsideration.

This court granted a writ of certiorari. NSP and the PUC then moved to discharge certiorari, arguing that this court lacks jurisdiction to hear the appeal. That motion was denied, and the jurisdictional issue will be considered along with the merits.

### ISSUES

1. Does this court have jurisdiction to review a final decision of the PUC not resulting from a contested case or a rule-making proceeding?

2. Was the PUC's dismissal of MPIRG's complaint within its discretion under Minn. Stat. § 216B.17?

### ANALYSIS

#### I

Northern States Power Company and the PUC argue that this court does not have jurisdiction to review the PUC's dismissal of MPIRG's complaint. Minn.Stat. § 216B.52, subd. 1 (Supp.1983), provides the procedure for appealing PUC actions:

> Any party to a proceeding before the commission or any other person, aggrieved by a decision and order and directly affected by it, may appeal from the decision and order of the commission in accordance with chapter 14.

NSP and the PUC argue that because § 216B.52 directs that review be "in accordance with chapter 14," this court is limited to review of cases that would be reviewable under chapter 14, the Minnesota Administrative Procedure Act (APA). The APA authorizes appeals challenging the validity of rules and appeals from decisions in "contested cases." *See* Minn.Stat. §§ 14.-44, 14.63 (1982 & Supp.1983). The jurisdiction statute for this court parallels the APA jurisdiction provision, granting this court jurisdiction over "decisions of administrative agencies in contested cases." Minn.Stat. § 480A.06, subd. 4 (Supp.1983).

Minn.Stat. § 14.02, subd. 3 (1982), defines "contested case" as "a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing". The PUC did not hold a hearing on MPIRG's complaint and was not required to. *See* Minn.Stat. § 216B.17, subd. 1 (1982). Therefore, the PUC's dismissal of MPIRG's complaint was not an agency decision in a "contested case." It is not reviewable under the APA and, respondents argue, is thus not reviewable at all by this court.

This court's jurisdiction, however, is not limited to that conferred by its own jurisdictional statute or the APA. The Minnesota Constitution provides that this court shall have "appellate jurisdiction over all courts, except the supreme court, *and other appellate jurisdiction as prescribed by law.*" Minn. Const. art. VI, § 2 (emphasis added). It is well settled that the words "by law" in this state's constitution mean "by legislative enactment." *In re Clerk of Lyon County Courts' Compensation,* 308 Minn. 172, 174, 241 N.W.2d 781, 783 (Minn. 1976).

Minn.Stat. § 216B.52 authorizes review of a "decision and order" of the commission and does not limit review to "contested cases." We read the phrase "in accordance with chapter 14" in § 216B.52 as indicating that APA review procedures should be used, rather than as limiting this court's jurisdiction to review only "contested case" actions of the PUC.

#### II

MPIRG argues that the Commission's dismissal of its complaint involved an error of law, was arbitrary and capricious, and was unsupported by substantial evidence. *See* Minn.Stat. § 14.69 (1982).

*Was the PUC's use of 1982 cost-of-equity data an error of law?*

MPIRG alleges as an error of law the PUC's use of 1982 data in figuring

NSP's cost of equity and the current reasonableness of rates, claiming that not using the most current data severely limits the scope of § 216B.17, contrary to legislative intent. Section 216B.17, subd. 1, governing complaints against public utilities, provides:

> On its own motion or upon a complaint * * * the commission shall proceed, with notice, to make such investigation as it may deem necessary. The commission may dismiss any complaint without a hearing if in its opinion a hearing is not in the public interest.

Section 216B.17 provides the PUC with considerable discretion. The provision does not specify particular procedures or mandate consideration of any specific data. Unless the PUC's action was so deficient as not to constitute an "investigation," it would not be an "error of law". Use of less than current data does not totally invalidate the PUC's investigation, and thus does not render the PUC's interpretation of its investigative duty under this general and highly discretionary statute erroneous as a matter of law.

### Was the PUC's dismissal of MPIRG's complaint arbitrary and capricious?

■ MPIRG argues that the PUC's action was arbitrary and capricious because the PUC determined that MPIRG's complaint had merit, ordered an investigation, and then dismissed the complaint without addressing allegations MPIRG made concerning recent changes in the cost-of-equity capital. The PUC's order, however, reveals that the PUC did address MPIRG's allegations that the use of 1982 cost-of-equity data was unreasonable:

> [T]he commission is convinced by the DPS's arguments that the time period it selected is reasonable. To determine the cost of equity for 1983, the DPS put itself in the position of an investor on January 1, 1983. It argued that the investor would look at dividend yield and growth rate data available at that time to determine the value of the stock for 1983. The Commission finds that for the

purpose of deciding this complaint, it is appropriate to consider the data from the period relied on by the DPS.

The PUC expressly considered the cost of capital issue and evaluated it in the complex context of ratemaking, which involves many factors in addition to changes in the cost of equity capital. The PUC had to decide whether public interest would be served by a contested case proceeding because of an indication of change in one factor. It stated:

> If the evidence was strong that the cost of capital has declined to a level that would support a finding that NSP's rates are excessive and unreasonable, the Commission could order that a contested case hearing be held to develop substantial evidence to form the basis for a final determination. It is necessary that there be a clear and convincing body of evidence before a contested case procedure is ordered because the public interest would not otherwise warrant expenditure of the substantial costs associated with a contested case proceeding.

Section 216B.17 reflects a clear legislative intent to grant the agency substantial discretion to determine the necessity of a hearing. Because the PUC considered MPIRG's claims and had a reasoned and sound basis for its decision, we decline to substitute our judgment for that of the agency.

### Was the PUC's decision supported by substantial evidence?

■ "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn. 1977). Here, the PUC concluded that a potentially lengthy and expensive hearing was not in the public interest. It relied on the investigation and report of the DPS, a neutral state agency, and, in addition, it specifically discussed and evaluated the bases for the DPS' findings and conclusions. Finally, the DPS report noted that NSP's realized return on equity had slight-

ly (by 1/100 of a percent) exceeded the upper bounds of the permitted return on equity. The PUC, therefore, ordered NSP to file earnings reports with the PUC and the DPS every six months. The evidence presented is sufficient to support the PUC's conclusion that such monitoring better serves the present public interest than immediately beginning a repetitive contested case proceeding.

### DECISION

The Minnesota Public Utilities Commission's dismissal of MPIRG's complaint was within its discretion under Minn.Stat. § 216B.17 (1982).

Affirmed.