761 F.2d 509
 MINNESOTA STATE ETHICAL PRACTICES BOARD, Appellee,
v.
The NATIONAL RIFLE ASSOCIATION OF AMERICA, Neal Knox,
William B. Binswanger, Warren Cassidy, The
National Rifle Association Political
Victory Fund and Michael
McCabe, Appellants.
 No. 84-5101.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1984.
Decided May 14, 1985.
 
 Mark Ohnstad, Edina, Minn., for appellants.
 David L. Graven, Minneapolis, Minn., for appellee.
 Before LAY, Chief Judge, BRIGHT and BOWMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The National Rifle Association (NRA), the National Rifle Association Political Victory Fund (NRA-PVF), a federal political action committee, and certain individuals employed by the two organizations appeal from a judgment of the district court[1] requiring them to register their lobbying and political funding activities pursuant to the Minnesota Ethics in Government Act (the Act), Minn.Stat. Secs. 10A.01-.34 (1984). For reversal, the appellants argue that the Act violates the United States Constitution in that (1) it unduly abridges their first amendment right of association, and (2) it denies them equal protection of the law. We reject these arguments and affirm the district court's order.
 
 
 2
 I. BACKGROUND.
 
 
 3
 This appeal concerns two separate activities regulated by the Act: lobbying and political funding. The Act defines a "lobbyist" as follows:
 
 
 4
 "Lobbyist" means any individual:
 
 
 5
 (a) Engaged for pay or other consideration, or authorized by another individual or association to spend money, who spends more than five hours in any month or more than $250, not including his own travel expenses and membership dues, in any year, for the purpose of attempting to influence legislative or administrative action by communicating or urging others to communicate with public officials; or
 
 
 6
 (b) Who spends more than $250, not including his own traveling expenses and membership dues, in any year for the purpose of attempting to influence legislative or administrative action by communicating or urging others to communicate with public officials.
 
 
 7
 "Lobbyist" does not include any:
 
 
 8
 (a) Public official or employee of the state or any of its political subdivisions or public bodies acting in his official capacity;
 
 
 9
 (b) Party or his representative appearing in a proceeding before a state board, commission or agency of the executive branch unless the board, commission or agency is taking administrative action;
 
 
 10
 (c) Individual while engaged in selling goods or services to be paid for by public funds;
 
 
 11
 (d) News media or their employees or agents while engaged in the publishing or broadcasting of news items, editorial comments or paid advertisements which directly or indirectly urge official action;
 
 
 12
 (e) Paid expert witness whose testimony is requested by the body before which he is appearing, but only to the extent of preparing or delivering testimony;
 
 
 13
 (f) Stockholder of a family farm corporation as defined in section 500.24, subdivision 1, who does not spend over $250, excluding his own travel expenses, in any year in communicating with public officials; or
 
 
 14
 (g) Party or his representative appearing to present a claim to the legislature and communicating to legislators only by the filing of a claim form and supporting documents and by appearing at public hearings on the claim.
 
 
 15
 Minn.Stat. Sec. 10A.01 subd. 11. Persons defined as "lobbyists" must file registration forms and make regular reports of their lobbying activities. Minn.Stat. Secs. 10A.03, 10A.04.
 
 
 16
 The Act also defines the term "political fund" as "any accumulation of dues or voluntary contributions by an association other than a political committee, which accumulation is collected or expended for the purpose of influencing the nominations or election of a candidate * * *." Minn.Stat. Sec. 10A.01 subd. 16. Like lobbyists, political funds are required to register and file regular reports. Minn.Stat. Secs. 10A.14, 10A.20.
 
 
 17
 Appellant Neal Knox is the executive director of the National Rifle Association Institute for Legislative Affairs (NRA-ILA), located in Washington, D.C. The NRA-ILA is the lobbying division of the NRA. During March and April of 1981, Knox sent three letters and one mailgram from Washington to all members of the NRA in Minnesota (approximately 54,000 persons), urging them to contact their state legislators in support of three pieces of pending legislation. The district court concluded that these mailings constituted "lobbying" as defined by the Act, and ordered Knox to register and report as a lobbyist.
 
 
 18
 On or about January 20, 1982, the NRA-PVF contributed $4,950 to the Minnesota Gun Owners Political Victory Fund. Knox, who was serving at the time as chairman of the NRA-PVF, intended that the contribution would be used primarily to influence state elections, and it was so used. On August 22, 1982, the NRA, through the NRA-ILA, mailed a two-page letter to all of its members in Minnesota. The letter, urging the defeat of Warren Spannaus in an upcoming gubernatorial primary election, included a "Dump Spannaus" bumper sticker and a "Dump Spannaus" brochure. The bumper stickers and brochures were paid for by the NRA-PVF; the NRA paid for postage and the cost of preparing and printing the cover letter. In addition, in September 1982, the NRA spent over $8,000 in mailing "Dump Spannaus" postcards to its members in Minnesota. The district court concluded that these expenditures brought the NRA and the NRA-PVF within the definition of a "political fund" and ordered them to register and file regular reports.
 
 
 19
 In this appeal, the appellants claim that the Act is unconstitutional when applied to a private association, such as the NRA, communicating with its own members concerning political elections. They contend that the Act's reporting requirements inhibit members from exercising their first amendment right of association, and that the Act's definition of a "lobbyist" violates the equal protection clause of the fourteenth amendment because it contains arbitrary exceptions for persons such as shareholders in family farm corporations.
 
 
 20
 II. DISCUSSION.
 
 
 21
 A. First Amendment Arguments.
 
 
 22
 The appellants contend that both the lobbyist and political fund registration requirements violate their first amendment right of association. They object to the lobbyist registration provision because they claim that it interferes with communications between members of a voluntary organization. They object to the political fund provision because it requires disclosure of the names, addresses, and employers of certain contributors. Appellants claim that disclosure of this information has a chilling effect on NRA members' associational activities.
 
 
 23
 State laws which inhibit the exercise of first amendment rights are unconstitutional unless they serve a "compelling" state interest. NAACP v. Alabama, 357 U.S. 449, 463, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958). In United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), the Supreme Court considered the government interest underlying the Federal Regulation of Lobbying Act, 2 U.S.C. Secs. 261-270 (the Lobbying Act). The Lobbying Act contains a lobbyist registration provision similar to that in the Act, requiring disclosure of the lobbyist's employer, sources of funds, disbursements, and the legislation sought to be influenced.
 
 
 24
 In Harriss, the Court described the government's interest in lobbyist registration as follows:
 
 
 25
 Present-day legislative complexities are such that individual members of Congress cannot be expected to explore the myriad pressures to which they are regularly subjected. Yet full realization of the American ideal of government by elected representatives depends to no small extent on their ability to properly evaluate such pressures. Otherwise the voice of the people may all too easily be drowned out by the voice of special interest groups seeking favored treatment while masquerading as proponents of the public weal. This is the evil which the Lobbying Act was designed to help prevent.
 
 
 26
 347 U.S. at 625, 74 S.Ct. at 816 (Footnote omitted). The Court deemed this "a vital national interest," id. at 626, 74 S.Ct. at 816, and concluded that the statute did not violate the freedoms guaranteed by the first amendment. Furthermore, the Court ruled that the Lobbying Act applied to the form of lobbying used in this case, namely, communication with lawmakers through an artificially stimulated letter campaign. Id. at 620, 74 S.Ct. at 813. In light of Harriss, we think the State of Minnesota has a compelling interest in requiring lobbyists to register their activities. Accordingly, we reject the appellants' challenge to this part of the Act.
 
 
 27
 The Supreme Court has also considered the constitutionality of campaign financing disclosure laws. In Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1975), the Court analyzed the reporting and disclosure requirements of the Federal Election Campaign Act of 1971, 2 U.S.C. Secs. 431-56 (the Campaign Act). The Court acknowledged that "compelled disclosure * * * can seriously infringe on privacy of association and belief guaranteed by the First Amendment." 424 U.S. at 64, 96 S.Ct. at 656. Nevertheless, it found that the governmental interests underlying the disclosure requirement, namely, providing voters with important information about the candidates, deterring corruption, and avoiding the appearance of corruption, were "sufficiently important to outweigh the possibility of infringement * * *." Id. at 66-68, 96 S.Ct. at 657-658. The Court then examined the record to determine whether any contributors had experienced threats of physical or economic harm as a result of the disclosure requirement. Finding no evidence of such conduct, the Court concluded that "the substantial public interest in disclosure * * * outweighs the harm generally alleged." Id. at 72, 96 S.Ct. at 660.
 
 
 28
 We conclude that, under Buckley, the State of Minnesota's interest in disclosure outweighs any infringement of the appellants' first amendment rights. The infringement in this case is no greater than that in Buckley, because the disclosure requirements here parallel those in the Campaign Act. In 1975, the Campaign Act called for quarterly reports listing the name, address, occupation, and place of business of each person who contributed $100 or more in a calendar year.[2] The Act requires disclosure of the name, address, and employer of each person who contributes $50 or more in one year for legislative races or $100 or more per year for statewide races or ballot questions. Minn.Stat. Sec. 10A.20 subd. 3(b). In addition, the Act provides an exemption from the reporting requirement for any individual who "demonstrates by clear and convincing evidence that disclosure would expose him to economic reprisals, loss of employment or threat of physical coercion." Minn.Stat. Sec. 10A.20 subd. 8. Thus, as in Buckley, the State of Minnesota recognizes that extreme hardship in individual cases might outweigh the State's interest in disclosure. The appellants in this case did not apply for the exemption. Therefore, on the record before us, we hold that the financial disclosure portions of the Act are not unconstitutional as applied to these appellants.
 
 
 29
 The appellants suggest that this case can be distinguished from Harriss and Buckley because the lobbying activity here occurred between members of a voluntary association. We do not think this distinction is constitutionally significant. The Act does not focus on the group affiliation of a lobbyist, it focuses on lobbying activity. When persons engage in an extensive letterwriting campaign for the purpose of influencing specific legislation, the State's interest is the same whether or not those persons are members of an association. The appellants have articulated no reason why their membership in the NRA should give them any greater constitutional protection with respect to lobbying activity than is enjoyed by other citizens. Therefore, we conclude that the constitutionality of this legislation is not affected by the fact that it has been applied to communications between the members of an association.
 
 
 30
 B. Equal Protection Argument.
 
 
 31
 The appellants' final argument applies only to the lobbyist registration portion of the Act. The Act's definition of the word "lobbyist" specifically excludes certain individuals, including public officials and shareholders in family farm corporations, under specified circumstances. Minn.Stat. Sec. 10A.01 subd. 11. The appellants argue that the State has not demonstrated a "rational connection" between these exceptions and a legitimate state purpose.[3]
 
 
 32
 We note at the outset that, under the rational basis test, legislative classifications are presumed to be valid. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976); Arceneaux v. Treen, 671 F.2d 128, 132 (5th Cir.1982). In order to overcome this presumption, the appellants have the burden of proving "that the facts on which the legislature may have relied in shaping the classification 'could not reasonably be conceived to be true by the governmental decisionmaker.' " Brandwein v. California Board of Osteopathic Examiners, 708 F.2d 1466, 1470 (9th Cir.1983) (quoting Vance v. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979)). In this case, the appellants have not discussed the Minnesota legislature's reasons for excluding certain persons from its definition of a lobbyist. We conclude that the appellants have failed to carry their burden of proof and that the presumption of validity remains in effect. Accordingly, we reject the appellants' equal protection argument.
 
 
 33
 III. CONCLUSION.
 
 
 34
 The appellants having demonstrated no constitutional deficiencies in the Act, we affirm the opinion of the district court.
 
 
 
 [1]
 The Honorable Miles W. Lord, Chief Judge, United States District Court for the District of Minnesota
 
 
 [2]
 The current version of the Campaign Act does not require disclosure of a contributor's name until contributions reach $200 in a year. 2 U.S.C. Sec. 434(b)(3) (1982)
 
 
 [3]
 Because the appellants have not argued that a more demanding test applies to the classification, we limit our discussion to the rational basis test