**In the MATTER OF a Complaint Against the SANDY PAPPAS SENATE COMMITTEE.**

**No. C7-91-1898.**

Court of Appeals of Minnesota.

Dec. 17, 1991.

Review Granted Jan. 22, 1992.

Raymond Faricy, Jr., St. Paul, for relator Russell Doty.

Hubert H. Humphrey, III, Atty. Gen., Martha Casserly, Sp. Asst. Atty. Gen., St. Paul, for respondent Ethical Practices Bd.

Kenneth Tilsen, St. Paul, for respondent Sandy Pappas for Senate Committee.

Considered at Special Term and decided by HUSPENI, P.J., and RANDALL and AMUNDSON, JJ.

## SPECIAL TERM OPINION

RANDALL, Judge.

### FACTS

Russell Doty filed a complaint with the Minnesota Ethical Practices Board, alleging that Senator Sandy Pappas failed to comply with statutory filing and disclosure requirements and that she exceeded campaign spending limits. After an investigation, the board concluded that Pappas "unintentionally exceeded the applicable 1990 campaign expenditure limit" by $903.42. Then, the board negotiated a penalty with Pappas wherein the board accepted payment of a fine in the amount of $903.42 and dismissed the complaint.

Doty obtained a writ of certiorari to challenge the penalty as being too lenient. The board moves to discharge the writ and dismiss the appeal alleging that Doty lacks standing to appeal.

### DECISION

Standing is a jurisdictional question to be determined by this court. *In re Implementation of Util. Energy Conservation Improvement Programs,* 368 N.W.2d 308, 312 (Minn.App.1985).

The ethical practices board monitors compliance with statutes governing campaign spending and disclosures. Its proceedings are governed by the Administrative Procedure Act and by promulgated rules. Minn. Stat. § 10A.02, subd. 13 (1990). "[A]ny individual" may file a complaint alleging a violation of the "Ethics in Government" act or the rules of the board. Minn.R. 4525.-0100, subpt. 6, .0200, subpt. 1 (1991). The board's rules authorize it to "hold a contested case hearing before making a finding" on any complaint. Minn.R. 4525.0200, subpt. 6 (1991). If a contested case hearing is held, "the person who filed the complaint and the person against whom it was filed" are "parties." Minn.R. 4525.0100, subpt. 5 (1991).

"Any person aggrieved by a final decision in a contested case is entitled to judicial review of the decision" by certiorari appeal to this court. Minn.Stat. § 14.63

(1990). In this case, the board chose not to hold a contested case hearing on Doty's complaint. However, this court's power to review agency proceedings extends beyond contested cases. *Minnesota Pub. Interest Research Group v. Northern States Power Co.*, 360 N.W.2d 654, 656 (Minn.App.1985). We have "jurisdiction to issue writs of certiorari to all agencies." Minn.Stat. § 480A.06, subd. 3 (1990). This court has the power to review a final decision of the ethical practices board, whether or not the decision arose from a contested case proceeding.

In urging that the writ of certiorari be discharged, the board concedes this court has jurisdiction to review its decisions, but argues that jurisdiction may be invoked only by the subject of the complaint, here Pappas, rather than by complainant Doty. We disagree.

The board's own rules permit *"any* individual, partnership, corporation, joint stock company, unincorporated association or society, or any government or governmental subdivision, unit, or agency, other than a court of law[,]" to file a complaint with the board. Minn.R. 4525.0100, subpt. 6, .0200, subpt. 1 (emphasis added). There would be no real access for a citizen concerned with honest government if we agree with the board that a complainant has no right to challenge the action that the board takes on a complaint. We will not construe access to end without at least a limited right to challenge the disposition of a complaint found meritorious.

We note that participation in agency proceedings strengthens a litigant's claim that he or she is aggrieved by the final decision and is entitled to seek appellate review. *In re Implementation*, 368 N.W.2d at 312. Doty's complaint brought the alleged violation to the board's attention for the first time. He was not an interloper or a meddler in existing agency proceedings. As a direct result of Doty's complaint, the board initiated an investigation into the conduct of the Pappas campaign. To the extent permitted by law, Doty participated in the board's handling of the complaint. If the board had held a contested case hearing, Doty would have been a "party," with all concomitant rights and obligations. We have discovered no statute or legislative history indicating an intent that the board established specifically to hear citizen complaints should escape judicial scrutiny of its treatment of those complaints unless the defendant appeals.

The "Ethics in Government" act furthers the public purposes of "providing voters with important information about the candidates, deterring corruption, and avoiding the appearance of corruption." *Minnesota State Ethical Practices Bd. v. National Rifle Ass'n*, 761 F.2d 509, 512 (8th Cir.1985) (citing *Buckley v. Valeo*, 424 U.S. 1, 66–68, 96 S.Ct. 612, 657–58, 46 L.Ed.2d 659 (1975)), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). The board's argument that the complainant has no appellate remedy would mean an agreement between the board and a candidate to dispose of a complaint will not be scrutinized by the courts. That appears to be inconsistent with the stated purpose of the law. The board's position could give rise to an appearance of collusion between the board and those it is charged to investigate. We find the intent of the applicable statutes and rules is to encourage broad participation in policing the conduct of government officials. Doty has established that his interests are those to be protected by the statutes and by the creation of the board. Standing depends on a party's ability to establish the existence of interests to be protected by the applicable statutes. *Mankato Aglime & Rock Co. v. City of Mankato*, 434 N.W.2d 490, 492 (Minn.App.1989).

As an aside, we offer no comment on the correctness of the board's decision. This opinion specifically raises no inference as on the strength or weakness of any party's position. The substantive issue is not before us at this time, and full briefing on the merits and the presentation of argument is yet to come. The narrow issue we speak to is standing.

Motion to discharge certiorari denied.

HUSPENI, Judge (dissenting).

I respectfully dissent because I do not believe either statutory or case law supports the majority's finding that complainant Doty has standing to appeal. The issue of standing to seek judicial review is distinct from the right to participate in agency proceedings. *In re Implementation of Util. Energy Conservation Improvement Programs*, 368 N.W.2d 308, 311–12 (Minn. App.1985). Participation in agency proceedings, alone, is insufficient to confer standing. *Id.* at 312. An individual who is adversely affected in fact by governmental action has standing to challenge the legality of that action, while one who is not adversely affected in fact lacks standing. 4 K. Davis, *Administrative Law Treatise* ch. 24 (2nd ed. 1983).

Our focus is on whether the agency decision has denied some personal or property right of the person seeking review, or has imposed some burden or obligation upon that person. *In re Getsug*, 290 Minn. 110, 114, 186 N.W.2d 686, 689 (1971). The fact that the person is acting in the public interest is insufficient to confer standing. *Id.* at 115–16, 186 N.W.2d at 689–90. A "concerned bystander" lacks standing to appeal in the absence of personal injury. *Diamond v. Charles*, 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986).

Doty's interest in promoting "an atmosphere for good government" and his concern "about the disposition of state funds" are commendable. However, that interest and that concern are not personal, and are indistinguishable from the interest and concern of all citizens. Doty has not established the existence of any personal injury resulting from the board's action. *See Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 482–83, 102 S.Ct. 752, 764, 70 L.Ed.2d 700 (1982) (citizen asserting right to government administered according to law lacks standing, in the absence of personal injury). While the public interest might be served by permitting judicial review of the board's operations, that review must be sought by one who has actually been personally injured by the board's decision.

While Minnesota has not addressed the complainant's standing to appeal from a decision of the ethical practices board, there are other contexts where a person authorized to make a complaint has no right to appeal the outcome of proceedings on the complaint. For instance, an individual who files a complaint against a lawyer has no right to judicial review of the summary dismissal of that complaint without a hearing. *Kennedy v. L.D.*, 430 N.W.2d 833, 838 (Minn.1988). The public interests in lawyer discipline matters are analogous to the public interests in campaign spending and disclosures.

Individuals who object to the severity of the punishment imposed on a subject of agency proceedings must demonstrate that their own interests are affected directly by the outcome of the proceedings, if they are to obtain judicial review. *Mankato Aglime & Rock Co. v. City of Mankato*, 434 N.W.2d 490, 493 (Minn.App.1989). Like Doty here, the parties seeking review in *Mankato Aglime* had participated in the agency proceedings. However, despite that participation, this court concluded they lacked standing to object to the penalty imposed on another. *Id.* Certainly, the public had an interest in fair proceedings before the Department of Transportation in *Mankato Aglime*. While I agree with the majority that the public has an interest in the fairness of the board's proceedings in this case, I am unable to distinguish *Mankato Aglime;* I believe it should control our decision here.

Doty's rights were not determined by the board. The final decision constitutes the board's evaluation of the conduct of Pappas, and it imposes certain obligations upon her. In *Mankato Aglime*, we held that the right of appeal is limited to the subject of the complaint. *Id.* In this case that right would be Pappas' and hers alone.