**MINNESOTA CITIZENS CONCERNED FOR LIFE, INC.; David Racer; and the Committee for State Pro–Life Candidates, Appellants,**

v.

**Douglas A. KELLEY, Clyde Miller, Wil Fluegel, Sidney Pauly, Terri Ashmore and Robert Milbert in their capacities as Chair and members of the Campaign Finance and Disclosure Board; and Amy Klobuchar in her official capacity as County Attorney for Hennepin County, Minnesota, Appellees.**

No. A04–2376.

Supreme Court of Minnesota.

June 30, 2005.

James Bopp, Jr., Jeffrey Gallant, Bopp, Coleson & Bostrom, Terre Haute, IN, for Appellant.

Mike Hatch, Attorney General, Kristine L. Eiden, Chief Deputy Attorney General, Jennifer A. Service, Assistant Attorney General, St. Paul, MN, for Appellees.

## OPINION

ANDERSON, G. Barry, Justice.

This case comes to us as a certified question from the Eighth Circuit Court of Appeals, which asks us to determine whether the definitions of "political committee" and "political fund" in Minn.Stat. § 10A.01, subds. 27 and 28 should be construed consistent with *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). An unsuccessful candidate for the Minnesota Senate, David Racer, and two issue advocacy organizations, Minnesota Citizens Concerned for Life, Inc. (MCCL) and the Committee for State Pro–Life Candidates, contended in federal district court that the definitions found in the statute are unconstitutional both facially and as applied to them. Appellees are the members of the Campaign Finance and Disclosure Board and Amy Klobuchar in her official capacity as Hennepin County Attorney. Appellees argued, and the federal district court agreed, that the definitions of "political committee" and "political fund" should be construed consistent with *Buckley.* Appellees claim that under this narrow construction, the statute does not govern appellants' activities, and that therefore they lack standing to challenge the statute. On appeal, the Eighth Circuit Court of Appeals certified to us a question of how to construe Minn.Stat. § 10A.01, subds. 27 and 28, concluding that these subdivisions had not been interpreted by Minnesota courts.

The facts are not disputed and are set forth in the Eighth Circuit's Order. In 1971, the U.S. Congress promulgated the Federal Election Campaign Act of 1971 (FECA), Pub.L. No. 92–225, § 305, 86 Stat. 3. The purpose of the act was to prevent corruption in federal elections. *Id.* FECA defined "contribution" and "expenditure" as the donation of money or property "for the purpose of influencing an

election or ballot question." *Id.,* § 301, 86 Stat. at 11–12 (codified as amended at 2 U.S.C. § 431(8) and (9) (2000)).

In response to a constitutional challenge to FECA, the United States Supreme Court held that "for the purpose of influencing" was unconstitutionally overbroad and vague. *Buckley v. Valeo,* 424 U.S. 1, 77–80, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). But the Court preserved the FECA provision, "for the purpose of influencing," by construing the challenged phrase narrowly to mean "expressly advocate." *Id.* The Court held that there was a compelling interest in campaign finance reform, but limited regulation to groups that "expressly advocat[e] the election or defeat of a clearly identified candidate." *Id.* at 80, 96 S.Ct. 612. This definition excluded groups engaged solely in issue advocacy. *Id.*[1]

In 1978, two years after the *Buckley* decision, Minnesota adopted the Ethics in Government Act (the Ethics Act). *See* Act of February 27, 1978, ch. 463, 1978 Minn. Laws 8, (codified at Minn.Stat. ch. 10A (2004)). The statutory language tracked the language of FECA, including definitions of "political committee" as an organization, and "political fund" as an accumulation of dues, the purpose of which is "to influence the nomination or election of a candidate or to promote or defeat a ballot question." Minn.Stat. § 10A.01, subds. 27 and 28 (2004). The legislative history of the Minnesota act suggests that the legislature was aware of the *Buckley* decision, although nothing in the legislative record before us specifically addresses the challenged definitions in light of *Buckley.*

In 2001, to clarify whether certain provisions of the Ethics Act applied to it, MCCL submitted questions about the definition of "political committee" and "political fund" in the Ethics Act to the Minnesota Campaign Finance and Disclosure Board (the Board).[2] The Board responded with Advisory Opinion 336, in which it addressed whether organizations that finance "communications * * * [that] do not contain words of express advocacy * * * [are] subject to regulation" as either a political committee or political fund. Minn. Campaign Fin. and Pub. Disclosure Bd., Op. 336 (Jan. 25, 2002). In Advisory Opinion 336, the Board stated that MCCL would be subject to regulation as a political committee or political fund if it made communications designed to influence the nomination or election of a candidate but that, in contrast to the federal act, no express endorsement of a particular candidate was required to trigger regulation.

Just before the November 2002 elections, appellants filed suit in federal district court to enjoin appellees from enforcing various campaign finance statutes, including the challenged definitions, claiming that those statutes violated the First Amendment both facially and as applied to them. Appellants later moved to convert their motion for preliminary injunction to a motion for summary judgment;

---

**1.** In *McConnell v. Federal Election Commission,* 540 U.S. 93, 191–93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003), the Supreme Court clarified that the FECA's constitutional problems arose from the ambiguity of the phrase, "for the purpose of influencing." The Court noted that the exclusion from disclosure requirements of issue advocacy groups in *Buckley* was based on statutory interpretation principles, rather than any constitutional mandate. *McConnell,* 540 U.S. at 192, 124 S.Ct. 619.

**2.** The Campaign Finance and Public Disclosure Board is authorized to issue and publish advisory opinions upon the application of "an individual or association who wishes to use the opinion to guide the individual's or association's own conduct." Minn.Stat. § 10A.02, subd. 12(a) (2004).

appellees filed a cross-motion for summary judgment.

The federal district court narrowly construed the phrase "to influence" in the challenged definitions, finding it substantially similar to "for the purpose of influencing," the phrase upheld in *Buckley*. *Minnesota Citizens Concerned for Life, Inc. v. Kelley,* 291 F.Supp.2d 1052, 1070 (D.Minn.2003). The federal district court noted that under Minnesota law, "[w]here the state statute is the same or substantially the same as the federal act from which it was copied, the prior construction of the federal statute should be deemed controlling * * * in construing the state statute." *Id.* (citing *State v. Stickney,* 213 Minn. 89, 91–92, 5 N.W.2d 351, 352 (1942)). Therefore, consistent with *Buckley,* the federal district court construed the definitions of "political committee" to require that an organization's major purpose be the nomination or election of a candidate, and "political fund" to require that the fund be used for express advocacy of a particular candidate or ballot question. *MCCL,* 291 F.Supp.2d at 1070. The federal district court determined that under these definitions, MCCL lacked standing to challenge the constitutionality of the definitions, because its major purpose was not to nominate, elect or defeat candidates. *Id.*

Appellants challenged this order in the Eighth Circuit Court of Appeals, which certified to this court the question of the construction of the challenged definitions. The question submitted by the Eighth Circuit Court of Appeals and endorsed by appellants is as follows:

> Whether Minn.Stat. § 10A.01, subds. 27 and 28, defining the terms "political committee" and "political fund," apply to issue advocacy groups, or whether the use of the phrase "to influence the nomination or election of a candidate or to promote or defeat a ballot question" and related phrases limits the application of those statutes to groups that expressly advocate the election or defeat of a particular candidate?

We accepted the certified question on December 22, 2004.

Appellees contend that this formulation of the question is imprecise because it does not accurately reflect the holding of *Buckley* with respect to regulation of a "political committee." Specifically, appellees argue that under *Buckley,* even if a group's major purpose is not the nomination or election of a candidate so that it does not qualify as a "political committee," any express advocacy activities in which it engages are still subject to regulation. Appellees suggest that a more helpful formulation of the question would be:

> Whether Minn.Stat. § 10A.01, subd. 27, defining the term "political committee," limits the application of that statute to organizations whose major purpose is the nomination or election of a candidate or promotion or defeat of a ballot question, and whether Minn.Stat. § 10A.01, subd. 28, defining the term "political fund," limits the application of that statute to activities expressly advocating the election or defeat of a candidate or the promotion or defeat of a ballot question.

■ We have the authority to reformulate the question presented by the Eighth Circuit. *Dohney v. Allstate Ins. Co.,* 632 N.W.2d 598, 600 n. 2 (Minn.2001); Minn. Stat. § 480.065, subd. 4 (2004). The construction of statutory provisions is a question of law, which this court reviews de novo. *Scott v. Minneapolis Police Relief Ass'n, Inc.,* 615 N.W.2d 66, 70 (Minn.2000).

At issue are the definitions of "political committee" and "political fund," which are defined in the statute as follows:

Subd. 27. Political committee. "Political committee" means an association whose major purpose is to influence the nomination or election of a candidate or to promote or defeat a ballot question, other than a principal campaign committee or a political party unit.

Subd. 28. Political fund. "Political fund" means an accumulation of dues or voluntary contributions by an association other than a political committee, principal campaign committee, or party unit, if the accumulation is collected or expended to influence the nomination or election of a candidate or to promote or defeat a ballot question.

Minn.Stat. § 10A.01, subds. 27 and 28 (2004).

Appellants urge this court to narrowly construe the definitions of "political committee" and "political fund" so as to limit application of Minn.Stat. § 10A.01, subds. 27 and 28, to groups whose communications expressly advocate the election or defeat of a clearly identified candidate. Appellees agree that a narrow construction of the challenged definitions, consistent with *Buckley,* is proper. The only point of contention appears to be which formulation of the certified question best encapsulates *Buckley's* holding.

In *Buckley,* the Supreme Court noted that FECA contained a general requirement that "political committees," candidates, and all others making expenditures "to influence the nomination or election of a candidate" disclose such expenditures, and that this requirement raised problems of vagueness and overbreadth due to the phrase "to influence." *Buckley,* 424 U.S. at 79, 96 S.Ct. 612 (discussing 2 U.S.C. § 434(e) (1970)). The Court resolved the vagueness problem in two ways. First, the Court construed "political committee" to encompass "organizations that are under the control of a candidate or the major

purpose of which is the nomination or election of a candidate." *Id.* The Court noted that under this construction, expenditures of political committees "can be assumed to fall within the core area sought to be addressed by Congress. They are, by definition, campaign related." *Id.*

Second, the Court construed "to influence" narrowly to mean that if a person or group other than a candidate or political committee makes expenditures, the only expenditures triggering FECA's reporting requirements are "for communications that expressly advocate the election or defeat of a clearly identified candidate." *Buckley,* 424 U.S. at 80, 96 S.Ct. 612. Reporting these expenditures serves an important informational purpose, according to the Court, because it

> shed[s] the light of publicity on spending that is unambiguously campaign related but would not otherwise be reported because it takes the form of independent expenditures * * *. The corruption potential of these expenditures may be significantly different, but the informational interest can be as strong as it is in coordinated spending, for disclosure helps voters to define more of the candidates' constituencies.

*Id.* at 81, 96 S.Ct. 612.

Thus, as to expenditures, *Buckley* held that *all* expenditures of political committees (groups under the control of a candidate or the major purpose of which is the nomination or election of a candidate) are subject to regulation because they are campaign-related by definition, and that all expenditures over $100 expressly advocating the election or defeat of a candidate are also subject to regulation, whether or not made by a political committee. *Id.* at 79–80, 96 S.Ct. 612.

The parties agree that this court has a duty to construe statutes to be constitu-

tional, if at all possible. *City of Duluth v. Sarette*, 283 N.W.2d 533, 537 (Minn.1979). This court has also held that "[w]here the state statute is the same or substantially the same as the federal act from which it was copied, the prior construction of the federal statute should be deemed controlling * * * in construing the state statute." *State v. Stickney*, 213 Minn. 89, 91, 5 N.W.2d 351, 352 (1942).

It is not clear from the legislative record whether the Minnesota legislature was specifically aware of *Buckley's* narrow construction of "political committee" and "political fund." But the legislature appears to have copied the definitions of "political committee" and "political fund" from the federal act, since these terms were amended after *Buckley* was decided and the language used in the state statute tracks the language of FECA. Thus, we consider the *Buckley* court's prior construction of the federal statute to be controlling in construing Minn.Stat. § 10A.01, subds. 27 and 28.

The parties disagree as to which formulation of the certified question will yield an answer that most accurately reflects *Buckley's* holding. Neither party proposes a formulation that addresses the precise holding in *Buckley*. As formulated by the Eighth Circuit and approved by appellants, the certified question imposes a false dichotomy. By phrasing the question as it did, the Eighth Circuit appears to suggest that a group can either be an issue advocacy group or a group that expressly advocates the election or defeat of a particular candidate, but that it cannot be both. In fact, under *Buckley*, it is possible for a group that is not a political committee, such as an issue advocacy group, to make regulable expenditures that expressly advocate the nomination or election of a candidate. *See Buckley*, 424 U.S. at 80, 96 S.Ct. 612. Thus, the first part of the certified question, "[w]hether Minn.Stat. § 10A.01, subds. 27 and 28 * * * apply to

issue advocacy groups," cannot be answered with an unqualified "yes" or "no." Beginning the second part of the certified question with the disjunctive "or" only serves to confuse the issue. The use of the phrase "to influence the nomination or election of a candidate * * *" does limit the application of those statutes to groups that expressly advocate the election or defeat of a particular candidate. But this is true whether the group in question is a political committee or an issue advocacy group.

Appellees' proposed formulation also presents challenges. Although it more accurately reflects *Buckley's* holding, the formulation of the certified question proposed by appellees is overly broad. Separating the definitions of "political committee" and "political fund" is logical, because the criteria used in defining the two terms are different. But "to influence ..." or "for the purpose of influencing" are the only phrases we are asked to construe and appellees' awkward formulation does not make this clear.

In a recent case on nearly identical facts, the Fourth Circuit Court of Appeals certified a similar question to the Virginia Supreme Court:

> Whether [Virginia disclosure statutes] apply to issue advocacy groups, or whether the use of the phrase "for the purpose of influencing the outcome of an election" and related phrases limits the application of those statutes to groups that expressly advocate the election or defeat of a particular candidate.

*Virginia Soc'y for Human Life, Inc. v. Caldwell*, 256 Va. 151, 500 S.E.2d 814, 816 (1998). The Virginia Supreme Court chose to reformulate the question, based on its concern that the question as presented did not conform to its policy of responding to certified questions in the affirmative or the negative. *Id.* The court formulated the question as follows:

Whether the use of the phrase "for the purpose of influencing the outcome of an election" in [the Virginia disclosure statutes] may be narrowly construed to limit the application of those statutes to groups that expressly advocate the election or defeat of a clearly identified candidate.[3]

*Id.* This formulation clearly and concisely presented the issue of importance, which was whether "to influence ..." should be read consistent with *Buckley* to limit disclosure requirements to express advocacy expenditures.[4]

■ To further our own policy of answering certified questions with an unqualified yes or no, and to clarify the conformity of our statute with *Buckley,* we choose to reformulate the Eighth Circuit's question as follows:

Whether the use of the phrase "to influence the nomination or election of a candidate or to promote or defeat a ballot question" and related phrases in Minn.Stat. § 10A.01, subds. 27 and 28 may be narrowly construed to limit the application of those statutes to groups that expressly advocate the nomination or election of a particular candidate or the promotion or defeat of a ballot question.

We answer the certified question, as reformulated, in the affirmative.

---

**3.** Unlike the Minnesota statutes at issue here, the challenged Virginia statutes do not concern ballot questions. Therefore, the Virginia Supreme Court's certified question does not address the promotion or defeat of ballot questions.

**4.** At oral argument, appellants argued that the Virginia formulation of the certified question begs the question of what constitutes the trigger for regulation as a political committee. But this would only be true if the phrase "to influence" remained undefined. The Virginia formulation explicitly defines "to influence" consistent with *Buckley,* making it clear that the trigger for regulation is a group's express advocacy of the election or defeat of a clearly identified candidate.