# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

No. 03-4077

_____

Minnesota Citizens Concerned    *
for Life, Inc.; David Racer;    *
and the Committee for    *
State Pro-Life Candidates,    *
   *
      Appellants,    *
   *
v.    *   Appeal from the United States
   *   District Court for the District
   *   of Minnesota.
Doug Kelley, Clyde Miller,    *
Sidney Pauly, Wil Fluegel,    *
Terri Ashmore, and    *
Robert Milbert, in their    *
capacities as Chair and members    *
of the Campaign Finance and    *
Disclosure Board; and    *
Amy Klobuchar, in her official    *
capacity as County Attorney for    *
Hennepin County, Minnesota,    *
   *
      Appellees.    *

_____

Submitted: October 18, 2004
Filed: November 4, 2005

_____

Before COLLOTON, LAY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Two pro-life organizations and an unsuccessful candidate for state senate challenge the constitutionality of several Minnesota campaign finance laws. As relevant here, Minnesota requires registration with the Campaign Finance and Disclosure Board by all organizations that accept or spend money "to influence," or whose major purpose is "to influence," the nomination or election of a specific candidate. **Minn. Stat. § 10A.01**, **subds. 27 and 28** (defining "political committee" and "political fund"). It also requires lobbyists to disclose the source of funds spent on lobbying, and restricts religious, charitable, and educational organizations from requesting money from candidates. **Minn. Stat. §§ 10A.04, subd. 4(d)**; **211B.08**. Further, Minnesota prohibits candidates from accepting money from another candidate's campaign committee, and caps per-candidate contributions from political committees, political funds, lobbyists, and large contributors at 20 percent of the candidate's expenditure limit. **Minn. Stat. § 10A.27, subd. 11**. On summary judgment, the district court found these statutes constitutional. *Minnesota Citizens Concerned for Life, Inc. v. Kelley*, 291 F. Supp. 2d 1052 (D. Minn. 2003). The challengers appeal.

Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

I.

Minnesota Citizens Concerned for Life, Inc., is a non-profit corporation whose purposes include informing the public on abortion and related topics. Before each election, MCCL publishes the results of a questionnaire identifying a candidate's position on such issues. MCCL does not expressly advocate the election or defeat of specific candidates.

The Committee for State Pro-Life Candidates is a registered political committee affiliated with MCCL, devoted to electing (or defeating) candidates based

-2-

on abortion-related issues. Unlike MCCL, CSPC publishes and distributes materials expressly advocating the election (or defeat) of candidates. CSPC also contributes directly to campaign committees of favored candidates.

Plaintiff David Racer ran unsuccessfully for state senate in November 2002. He plans to run again for office in Minnesota.

Just before the November 2002 election, MCCL, CSPC and Racer sought to enjoin enforcement of various campaign finance statutes, alleging violations of the First Amendment. Citing a failure to comply with the "short and plain" requirement of Federal Rule of Civil Procedure 8(a)(2), the district court withheld ruling on the complaint before the November election. After the election, the court permitted the challengers to file an amended complaint. Cross motions for summary judgment followed.

Ruling on the motions, the district court found the definition of "campaign material" in Minn. Stat. § 211B.01, subd. 2, unconstitutionally vague, and the disclaimer requirement of Minn. Stat. § 211B.04(a) as violating the right to speak anonymously. These rulings are not contested.

MCCL, CSPC and Racer appeal the district court's rulings on the following six provisions: A) the definitions of "political committee" and "political fund," Minn. Stat. § 10A.01, subds. 27 and 28; B) the lobbying allocation interpretation of Minn. Stat. § 10A.04, subd. 4(d); C) the ban on transfers between candidates' political committees, Minn. Stat. § 10A.27, subd. 9; D) the year-based contribution limits, Minn. Stat. §10A.27, subd. 1; E) the aggregate limit on contributions from political committees, political funds, lobbyists, and large contributors, Minn. Stat. §10A.27, subd. 11; and, F) the restriction on solicitations by religious, charitable, and educational organizations, Minn. Stat. § 211B.08.

-3-

II.

This court reviews de novo a grant of summary judgment, applying the same standard used by the district court. *See **Essco Geometric v. Harvard Indus.***, 46 F.3d 718, 729 (8th Cir. 1995). This court affirms where there are no genuine issues of material fact, and judgment is appropriate as a matter of law. *See **id.***, *citing* **Fed. R. Civ. P. 56(c)**.

A.    Definitions of Political Committee and Political Fund

MCCL challenges the definitions of "political committee" and "political fund," which read:

> "Political committee" means an association whose major purpose is to influence the nomination or election of a candidate or to promote or defeat a ballot question, other than a principal campaign committee or a political party unit.

**Minn. Stat. § 10A.01, subd. 27**.

> "Political fund" means an accumulation of dues or voluntary contributions by an association other than a political committee, principal campaign committee, or party unit, if the accumulation is collected or expended to influence the nomination or election of a candidate or to promote or defeat a ballot question.

**Minn. Stat. § 10A.01, subd. 28**. MCCL claims that the phrase "to influence" in both definitions is unconstitutionally vague and overbroad, violating the First Amendment.

The parties argued their case before this court on October 18, 2004. Then, no Minnesota court had construed these subdivisions. Without controlling state

-4-

precedent, this court would have to speculate or conjecture. *See **Kaiser v. Mem'l Blood Ctr. of Minneapolis, Inc.***, 938 F.2d 90, 93 (8th Cir. 1991). *See also **Virginia Soc'y for Human Life, Inc. v. Caldwell***, 152 F.3d 268, 272 (4th Cir. 1998) (certifying question to Virginia Supreme Court as to whether state campaign finance statute should be narrowly construed under *Buckley v. Valeo*, 424 U.S. 1, 77 (1976)); ***Virginia Soc'y for Human Life, Inc. v. Caldwell***, 500 S.E.2d 814 (Va. 1998) (narrowly construing the statute).

On December 13, this court certified a question to the Minnesota Supreme Court as to the construction of subdivisions 27 and 28. That court, after briefing and argument, ruled on June 30, 2005. By this court's order, the case is resubmitted for decision.

The Minnesota Supreme Court held:

[T]o clarify the conformity of our statute with *Buckley*, we choose to reformulate the Eighth Circuit's question as follows:

Whether the use of the phrase "to influence the nomination or election of a candidate or to promote or defeat a ballot question" and related phrases in Minn.Stat. § 10A.01, subds. 27 and 28 may be narrowly construed to limit the application of those statutes to groups that expressly advocate the nomination or election of a particular candidate or the promotion or defeat of a ballot question.

We answer the certified question, as reformulated, in the affirmative.

***Minnesota Citizens Concerned for Life, Inc. v. Kelley***, 698 N.W.2d 424, 430 (Minn. 2005).

In its opinion, the Minnesota Supreme Court holds that the challenged definitions do not apply to groups that engage only in pure issue advocacy. ***Id.*** at 429. MCCL claims to engage only in pure issue advocacy. The district court,

-5-

therefore, correctly found that MCCL lacks standing to challenge the definitions of "political committee" and "political fund."

B.     Lobbying Allocation Formula

Minn. Stat. § 10A.04, subdivision 4(d), requires MCCL's lobbyists to report each source of over $500 per year that MCCL used for lobbying, including the source's name, address, and employer.  MCCL contends this requirement violates the First Amendment by compelling disclosure of personal information about contributors who give generally to MCCL.  The district court held that the state's interest in regulating lobbying outweighs MCCL's First Amendment interests. *MCCL*, 291 F. Supp. 2d at 1066, *quoting* **Buckley**, 424 U.S. at 66 ("compelled disclosure" may be upheld where "government interests [are] sufficiently important to outweigh the possibility of infringement.").

In an advisory opinion, the Board has interpreted subdivision 4(d) to require that a lobbyist  principal, such as MCCL, provide its lobbyists the names of persons meeting either of two thresholds: 1) those who "earmarked" donations over $500 to MCCL for lobbying – which has never happened and thus MCCL does not attack this reporting requirement – or 2) those "whose aggregate contributions multiplied by the percentage of the budget the lobbyist principal used for lobbying is greater than $500."  **Minn. Campaign Fin. and Pub. Disclosure Bd. Op. 336** (Jan. 25, 2002) (Issue 5).  MCCL claims the statute as applied is vague and overbroad because the formula requires disclosure of contributors whose funds may not be used for lobbying.[1]

Both the Supreme Court and this court have upheld lobbyist-disclosure statutes based on the government's "compelling" interest in requiring lobbyists to register and

---

[1]The parties do not brief, nor did the district court address, the situation where donations to MCCL are earmarked not to be used for lobbying, and are not so used.

-6-

report their activities, and avoiding even the appearance of corruption. *See **Buckley***, 424 U.S. at 66; ***Minnesota State Ethical Pract. Bd. v. Nat'l Rifle Ass'n***, 761 F.2d 509, 512 (8th Cir. 1985) (upholding the predecessor statute to section 10A.04), *cert. denied*, 474 U.S. 1082 (1986). Applying *Buckley*, this court in *NRA* "examined the record to determine whether any contributors had experienced threats of physical or economic harm as a result of the disclosure requirement." ***NRA***, 761 F.2d at 512, *applying **Buckley***, 424 U.S. at 71-72. In this case, MCCL provides no evidence of such "extreme hardship."

MCCL contends that the main problem with subdivision 4(d) is that Minnesota requires the disclosure of contributors for pure "issue advocacy." MCCL invokes its contributors' rights to free speech and association with an advocacy organization as established since *NAACP v. Alabama*, 357 U.S. 449, 460-62 (1958). MCCL also notes it faces a misdemeanor charge if it fails to report the required personal information.

Subdivision 4(d) states simply that a "lobbyist must report each original source of money in excess of $500 in any year used for the purpose of lobbying . . . ." True, the statute itself does not have a specific formula to determine the threshold. The issue becomes whether the Board's formula is precise enough. MCCL cites cases applying *Buckley* to invalidate regulation of speech that is pure issue advocacy. *See **Vermont Right to Life Comm., Inc. v. Sorrell***, 221 F.3d 376, 389 (2d Cir. 2000); ***Iowa Right to Life Comm., Inc. v. Williams***, 187 F.3d 963, 968 (8th Cir. 1999). *Cf.* ***Virginia Soc'y for Human Life***, 152 F.3d at 273. Essentially, MCCL asserts that *Buckley*'s "express advocacy" limitation must be read into the statute, preempting the Board's formula. *See **Buckley***, 424 U.S. at 77.

This court must follow the latest pronouncement of the Supreme Court: "*Buckley* and *MCFL* were specific to the statutory language before us; they in no way drew a constitutional boundary that forever fixed the permissible scope of provisions

regulating campaign-related speech." ***McConnell v. Fed. Election Comm'n***, 540 U.S. 93, 192-93 (2003). *McConnell* explains that the express advocacy/issue advocacy distinction only resulted from narrowly construing an overbroad, vague statute. ***Id.*** If the statute is "easily understood and objectively determinable," the vagueness objection that persuaded the *Buckley* Court to limit FECA's reach to express advocacy is "inapposite." ***Id.*** at 194, *citing **Grayned v. City of Rockford***, 408 U.S. 104, 110 (1972).

The lobbying allocation formula is not unconstitutionally vague if it is easily understood and objectively determinable. MCCL contends that it cannot know at any specific time the percent of its budget spent on lobbying, and therefore its contributors cannot know whether their personal information will be disclosed. MCCL concludes that the lobbying allocation formula thus does not give fair warning of what is required or prohibited, citing *Thorburn v. Austin*, 231 F.3d 1114 (8th Cir. 2000), and *Grayned*, 408 U.S. at 108.

The Board counters that MCCL, and its contributors, need only consult public records in order to calculate the lobbying allocation formula. MCCL makes comprehensive disclosure of its total finances for the preceding calendar year. *See* **Minn. Stat. § 309.53** (Charitable Organization Act). MCCL also discloses as a "principal" the amount it spends on lobbying, again for the preceding calendar year. *See* **Minn. Stat. § 10A.04, subd. 6**. The Board concludes that a person of common intelligence can compare the two publically available numbers and determine the lobbying allocation formula.

The Board does not claim in either its brief, or its advisory opinion, to require a continually-recalculated percentage allocation. As interpreted by the Board, the lobbying allocation formula is not unconstitutionally vague, and does not infringe upon contributors' rights to free speech and association with an advocacy organization.

-8-

MCCL finally claims that the formula is arbitrary, as the amount spent on lobbying may vary from year to year. MCCL offered no proof of this assertion in the district court (and the comprehensive annual amounts in the record – which are roughly comparable from year to year – refute it.) On this record, the lobbying allocation formula is not arbitrary.

MCCL fails to prove that the lobbying allocation formula causes "extreme hardship," or improperly regulates issue advocacy. Further, as interpreted by the Board, the formula is not vague. Accordingly, the district court properly held that as applied, subdivision 4(d) is constitutional.

C.    Ban on Transfers between Candidates' Political Committees

Section 10A.27, subdivision 9, prohibits the transfer of funds between candidates' political committees, except when the contributing candidate's committee is dissolving. Racer, as a future candidate, claims this ban infringes his First Amendment right of association, to receive money from like-minded candidates. Specifically, he claims the ban is not closely drawn to match a sufficiently important state interest. *See Federal Election Comm'n v. Beaumont*, 539 U.S. 146, 162 (2003) (stating the scrutiny for a ban on campaign contributions). *See also Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 387-88 (2000).

The district court found that Minnesota bans transfers between candidate-committees to prevent circumventing the contribution/spending limits, to avoid the appearance of corruption, and to restrict those in power from funneling money to those seeking power. Avoiding the appearance or perception of corruption is a significant state interest in the evaluation of campaign finance laws. *See McConnell*, 540 U.S. at 143-44. Racer argues that the potential for corruption from candidate-committee transfers is minimal because: candidates will transfer money only to other like-minded candidates; contribution limits already exist; Minnesota has a general

anti-circumvention statute in section 10A.29; and, earmarking could be required by the original contributor.  The Supreme Court has flatly rejected such logic:

> And because the First Amendment does not require Congress to ignore the fact that "candidates, donors, and parties test the limits of the current law," [*Federal Election Comm'n v. Colorado Republican Federal Campaign Comm.*, 533 U.S. 431, 457 (2001)], these interests have been sufficient to justify not only contribution limits themselves, but laws preventing the circumvention of such limits, *id.*, at 456 ("[A]ll Members of the Court agree that circumvention is a valid theory of corruption").

*McConnell*, 540 U.S. at 144.

Subdivision 9 is closely drawn to match the interests identified.  *See Beaumont*, 539 U.S. at 162.  Subdivision 9 limits contributions from campaign committees, not from candidates personally.  *See* **Minn. Stat.  § 10A.27, subd. 9** (limiting contributions from another candidate's  "principal campaign committee," a committee with the other candidate's name or title, or a committee otherwise authorized by the contributing candidate).  A candidate may personally contribute to another's campaign, endorse another candidate, encourage contributors to another candidate, and support another candidate in many legal ways.

Because subdivision 9 serves the significant interest of avoiding corrupt elections by banning intercandidate-committee transfers, and is closely drawn, the district court correctly found it constitutional.

D.    Year-Based Contribution Limits

Racer also challenges Minn. Stat. § 10A.27, subdivision 1, setting different contribution limits for election and non-election years.  He claims it gives incumbents an unfair advantage in violation of the First Amendment.  The district court found no

basis for Racer's contention that "the year-based limit discriminates against challengers as a class." **MCCL**, 291 F. Supp. 2d at 1062. This court agrees.

Subdivision 1 provides:

[A] candidate [for state senate] must not permit the candidate's principal campaign committee to accept aggregate contributions made or delivered by any individual, political committee, or political fund in excess of . . . $500 in an election year for the office sought and $100 in other years.

**Minn. Stat. § 10A.27, subd. 1(a)(4)**.

"Absent record evidence of invidious discrimination against challengers as a class, a court should generally be hesitant to invalidate legislation which on its face imposes evenhanded restrictions." **Buckley**, 424 U.S. at 31. Racer notes that in 1992, the Ninth Circuit held an annual contribution limit violated the First Amendment, due to disparities in fundraising between incumbents and challengers. *See* **Service Employees Int'l Union v. Fair Political Practices Comm'n**, 955 F.2d 1312 (9th Cir.), *cert. denied*, 505 U.S. 1230 (1992). However, the Ninth Circuit has since recognized that this holding is superceded by *Beaumont* and *Shrink PAC*. **Montana Right to Life Ass'n v. Eddleman**, 343 F.3d 1085, 1091-92 & n.2 (9th Cir. 2003), *cert. denied.*, 125 S. Ct. 47 (2004), *quoting* **Beaumont**, 539 U.S. at 161, *and* **Shrink PAC**, 528 U.S. 387-88, 397.

Regulations on contributions are "merely 'marginal' speech restrictions subject to relatively complaisant review under the First Amendment, because contributions lie closer to the edges than to the core of political expression." **Beaumont**, 539 U.S. at 161. In 2003, the Ninth Circuit upheld Montana's contribution limit – that doubled if the candidate had a contested primary – because the record showed "no support for the proposition that an incumbent's advantages [are] leveraged into something

-11-

significantly more powerful by contribution limitations applicable to all candidates, whether veterans or upstarts." ***Eddleman***, 343 F.3d at 1096, *quoting **Shrink PAC***, 528 U.S. at 389 n.4.

As in *Eddleman*, Racer presents no evidence that the statute here causes any disadvantage to challengers. Challengers may accept contributions throughout a multi-year election cycle. A candidate may – and often must – establish a campaign committee before filing for office. *See* **Minn. Stat. § 10A.01, subd. 10** (defining "candidate," as an individual who has "received contributions or made expenditures in excess of $100"). Once deemed a "candidate," a "principal campaign committee" must be formed, which can remain in existence for years. *See* **Minn. Stat. § 10A.242**, **subds. 1-2**. Thus, challengers may form campaign committees and raise money years in advance of an election.

That a challenger may decide to run late in the election cycle – Racer's main evidence – is not attributable to subdivision 1. Because Racer fails to present "evidence of invidious discrimination against challengers as a class," the district court did not err in finding subdivision 1 constitutional.

E.     Aggregate Limit on Contributions from PACs, Political Funds, Lobbyists, and Large Contributors

Minn. Stat. § 10A.27, subdivision 11, limits – to 20 percent of the candidate's expenditure limit – the aggregate amount of contributions that a candidate may receive from political committees (which the parties call "PACs"), political funds, lobbyists, and large contributors. CSPC, a PAC, contends that because this bans PAC contributions above an aggregate amount, it is not closely drawn to a sufficient government interest.

As noted, contribution limits "entai[l] only a marginal restriction upon the contributor's ability to engage in free communication." *McConnell*, 540 U.S. at 134-35 (alteration in original), *citing* **Buckley**, 424 U.S. at 20. "Thus, a contribution limit involving even significant interference with associational rights is nevertheless valid if it satisfies the lesser demand of being closely drawn to match a sufficiently important interest." *McConnell*, 540 U.S. at 136, *quoting* **Beaumont**, 539 U.S. at 162) (internal quotations omitted).

For a sufficiently important government interest, the government must show that the legislature passed a contribution limit either relying upon the evidence and findings accepted in *Buckley*, or had similar concerns. *See* **Shrink PAC**, 528 U.S. at 393. In *Shrink PAC*, the government proved that "large contributions have the real potential to buy votes," citing various newspaper articles and reports of perceived corruption from large contributions. *Id.* at 393-94 (internal quotations omitted).

In this case, the district court found that Minnesota passed an aggregate limit on PAC contributions "to prevent PACs and other organizations 'that can fund millions of dollars into campaigns' from unleashing a 'flood of money' to effectively 'control[] the Capitol.'" *MCCL*, 291 F. Supp. 2d at 1063. As in *Shrink PAC*, the record before the district court included newspaper articles detailing special interest contributions and perceived corruption. One article notes that "the 10 biggest-spending special interest contributors last election were rewarded in 1991 by winning 41 of the top 50 items on their legislative wish lists." Thomas J. Collins and Jack B. Coffman, **Buying Influence**, *St. Paul Pioneer Press*, April 12, 1992, at 1A. According to a report on election reform, "political power now 'has shifted to those candidates in the best position to take advantage of large campaign contributions and well-organized groups with parochial interests.'" **For Rent: St. Paul Office, Politician Included**, *Star Tribune: Newspaper of the Twin Cities*, August 10, 1992, at 14A (editorial).

It is an important state interest to prevent "both the actual corruption threatened by large financial contributions and the eroding of public confidence in the electoral process through the appearance of corruption." *McConnell*, 540 U.S. at 136, *quoting Federal Election Comm'n v. National Right to Work*, 459 U.S. 197, 208 (1982). "[T]here is little reason to doubt that sometimes large contributions will work actual corruption of our political system, and no reason to question the existence of a corresponding suspicion among voters." *Shrink PAC*, 528 U.S. at 395. Because the record here "demonstrates that the danger of corruption, or the appearance of such a danger, is greater when dealing with PAC money as opposed to other contributions," Minnesota's interest is constitutionally sufficient. *See Eddleman*, 343 F.3d at 1096, *citing Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 658-60 (1990).

Minnesota's aggregate PAC limit is closely drawn. Limiting PAC donations to 20 percent of a candidate's total expenditure limit combats the potential of PACs' influence on any one candidate. This limit is not "so radical in effect as to render political association ineffective, drive the sound of a candidate's voice below the level of notice, and render contributions pointless." *Shrink PAC*, 528 U.S. at 397. The limit does not prevent CSPC from expressing support in other ways such as making independent expenditures, volunteering services to a campaign, or endorsing the candidate. *See Eddleman*, 343 F.3d at 1098.

CSPC asserts that Minnesota does render political association ineffective, and contributions pointless, claiming that a candidate who has reached the 20 percent maximum may not return a previously-received contribution in order to accept one (or a partial one) from a more-desired PAC. In challenges to similar laws in other states, the ability to return contributions has been critical. *See Eddleman*, 343 F.3d at 1098 (upholding aggregate PAC limit allowing for return of money to accommodate alternative contribution); *Gard v. Wisconsin State Elections Bd.*, 456 N.W.2d 809, 829 (Wis. 1990) (same).

In Minnesota, a candidate that reaches the aggregate limit may return a previous PAC contribution – in whole or in part – in order to accept one from a different PAC. The Board has clearly ruled that contributions may be returned. *See* **Minn. Campaign Fin. and Pub. Disclosure Bd. Op. 192** (Aug. 9, 1985)(Issue 2). CSPC reads a negative command into subdivisions 3 and 3a of section 10A.15, that contributions may *not* be returned to one PAC to accommodate another PAC. To the contrary, Minnesota law authorizes returned contributions as "non-campaign disbursements." *See* **Minn. Stat. §§ 10A.01, subds. 9(1), 26(2); 10A.20, subd. 3(m)**. Thus, state law supports the Board's opinion that returned contributions are authorized in Minnesota.[2]

Minnesota's aggregate limit on PAC contributions is closely drawn to match a sufficiently important state interest and "avoid[s] unnecessary abridgment of associational freedoms." ***Buckley***, 424 U.S. at 25. Thus, the district court properly found subdivision 11 constitutional.

F.   Restriction on Solicitations by Religious, Charitable, and Educational Organizations

MCCL attacks Minn. Stat. § 211B.08, which prohibits religious, charitable, or educational organizations from requesting donations from candidates or committees.[3] The "candidates" who may not be solicited are those seeking almost all elected offices – federal, statewide, legislative, judicial and local (including school and special

---

[2]This parallels federal election law, which illustrates "refunded contribution" as one to the "Very Controversial PAC." *See* Federal Election Comm'n, ***Campaign Guide for Congressional Candidates and Committees***, May 2004, at 84, 128**,** *available at* http://www.fec.gov/pdf/candgui.pdf, *citing* **11 C.F.R. 103.3(b), 104.8(d)(4)**.

[3]The district court and the parties assume that MCCL is a "religious, charitable, or educational organization" within the meaning of section 211B.08.

districts, towns, cities, and counties). *See* **Minn. Stat. § 211B.01, subd.3**. A organization that violates section 211B.08 commits a misdemeanor. *See* **Minn. Stat. §§ 211B.19, 609.03(3)**.

The First Amendment protects charitable solicitations, subjecting section 211B.08 to exacting scrutiny. *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 788-89 (1988). The state may regulate charitable solicitations directly and substantially if the law serves a "sufficiently strong, subordinating [State] interest . . . and is narrowly drawn to serve that interest without unnecessarily interfering with First Amendment freedoms." *National Fed'n of the Blind v. Pryor*, 258 F.3d 851, 854-55 (8th Cir. 2001) (internal quotations and citation omitted).

As for the State interest, the district court found that section 211B.08 prohibits "organizations from soliciting money from candidates in exchange for votes." *MCCL*, 291 F. Supp. 2d at 1065. The Supreme Court recognizes that a state, like Minnesota, has a sufficiently strong – even "compelling" – interest in preventing corruption or the appearance of corruption. *See Federal Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496-97 (1985). This court agrees that section 211B.08 serves a sufficiently strong interest. The issue thus is whether section 211B.08 is narrowly tailored to serve that interest.

The Board emphasizes that section 211B.08 prohibits only the organization's request for money and allows a candidate voluntarily to donate money to any charity. *Compare Florida Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1326-1329 (11th Cir. 2001) (ban on candidates contributing *to* charitable organizations). While true, this ignores that the right at issue is MCCL's First Amendment right to solicit contributions.

The Board claims that section 211B.08 is narrowly tailored because it expressly does not apply to requests for: business advertisements in periodicals to which the

-16-

candidate was a regular contributor before candidacy; ordinary business advertisements; regular payments to religious, charitable, or educational organizations to which the candidate belonged or contributed for more than six months before candidacy; or, ordinary contributions at church services. *See* **Minn. Stat. § 211B.08(1)-(4)**.

These statutory exceptions do not satisfy the "narrowly tailored" requirement. Specifically, MCCL wants to solicit contributions from the 162 legislative candidates who previously responded to its questionnaire in agreement with MCCL's position on issues, but have never contributed to MCCL. Also, MCCL regularly makes general appeals – such as those in MCCL's monthly *News* – that may reach a candidate or committee. Section 211B.08 bans such requests for *any* amount even when the organization has no knowledge that the prospective donor is a candidate or committee, or the solicitation otherwise has no potential to affect voting behavior. *Compare* **Lesiak v. Ohio Elections Comm'n**, 716 N.E.2d 773, 747(Ohio Ct. App. 1998) (finding violation of Ohio's version of section 211B.08 where organization solicited candidates at "candidate night" before endorsement that evening). The Board counters that the number of Minnesota candidates and committees is relatively small, so that section 211B.08 is not a direct and substantial limit on charitable solicitations. While the number of candidates may be a small part of the population at any particular time, some are candidates for decades, others for only a few days. Equally, as discussed in part D, some committees last for years, others for a short time. In sum, section 211B.08 bars requests that have nothing to do with preventing corruption, or the appearance of corruption.

Accordingly, the district court erred in finding that section 211B.08 is narrowly tailored, and its judgment is reversed as to section 211B.08.

## III.

The judgment of the district court is affirmed in part, reversed in part, and the case remanded.

_____