# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2465

_____

Tammy Powell,                         *
                                      *
            Appellant,                *
                                      *   Appeal from the United States
     v.                               *   District Court for the
                                      *   Southern District of Iowa.
Yellow Book USA, Inc.;                *
Victoria Kreutz,                      *
                                      *
            Appellees.                *

_____

Submitted: January 9, 2006
Filed: April 25, 2006

_____

Before WOLLMAN, JOHN R. GIBSON, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After the district court[1] granted summary judgment to Yellow Book USA, Inc., and Victoria Kreutz (now Victoria Hammon) on all of Tammy Powell's employment-related claims, she appealed. We affirm.

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

## I.

Ms. Powell began her employment at Yellow Book as a data-entry processor. After an interview, Yellow Book promoted her to a financial service representative. In this new job she sat next to Ms. Kreutz. According to Ms. Powell, Ms. Kreutz propositioned her for sex, sought to convert her to Ms. Kreutz's religion, and spiked her beverage with methamphetamine. The day before a mediation session, Ms. Powell emptied her desk and departed the office on FMLA leave. When she failed to return, Yellow Book terminated her.

Following her termination, Ms. Powell sued Yellow Book and Ms. Kreutz for sexual harassment, religious harassment, and retaliation. Ms. Powell also claimed that both defendants were liable under Iowa law for assault and battery because Ms. Kreutz spiked Ms. Powell's Diet Pepsi. Finally, Ms. Powell made claims against Ms. Kreutz individually for invasion of privacy and tortious interference with a contractual relationship. The district court granted the defendants' motion for summary judgment on all claims.

We review the grant of summary judgment *de novo*, applying the same standards as the district court. *Minnesota Citizens Concerned for Life, Inc. v. Kelley*, 427 F.3d 1106, 1109 (8th Cir. 2005). Summary judgment is appropriate where there is no genuine issue of material fact and the movants are entitled to judgment as a matter of law. *Id.* In deciding a motion for summary judgment, the court must consider all the evidence and the reasonable inferences that arise from it in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank.*, 92 F.3d 743, 747 (8th Cir. 1996). We may affirm the district court's grant of summary judgment on any basis found in the record. *Figg v. Russell*, 433 F.3d 593, 597 (8th Cir. 2006). We consider each of Ms. Powell's claims in turn.

## II.

We turn first to Ms. Powell's claims for sexual harassment, religious harassment, and retaliation against Yellow Book under Title VII and the Iowa Civil Rights Act (ICRA). With respect to claims against employers under ICRA, Iowa courts have traditionally used the analytical framework used for Title VII claims and looked to federal law for guidance because ICRA is modeled in part on Title VII. *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005); *Hulme v. Barrett,* 449 N.W.2d 629, 631 (Iowa 1989); *Johnson v. University of Iowa*, 431 F.3d 325, 332 (8th Cir. 2005). The following discussion therefore applies to Ms. Powell's harassment and retaliation claims against Yellow Book under both Title VII and ICRA.

## A.

Employers violate Title VII of the Civil Rights Act of 1964 if they commit, abet, or condone discrimination based on sex or religion that results in a hostile work environment. For Ms. Powell to make a *prima facie* case of harassment against Yellow Book based on the conduct of Ms. Kreutz, a non-supervisory co-worker, there must be evidence that Ms. Powell belongs to a protected group, that she was subjected to unwelcome harassment, that the harassment occurred due to her protected group status, that the harassment affected a term, condition, or privilege of her employment, and that Yellow Book either knew or should have known of the harassment but failed to take proper action. *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 907-08 (8th Cir. 2003); *see Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000).

Ms. Powell contends that Ms. Kreutz sexually harassed her at work. As evidence, Ms. Powell points to several instances where Ms. Kreutz talked about her (Ms. Kreutz's) sexual exploits outside the office, described particular fantasies that she harbored concerning co-workers, and propositioned Ms. Powell for sex. Although Ms. Kreutz admits that she did have sexual conversations around the office, she denies ever soliciting Ms. Powell. For the purposes of summary judgment, we assume that

such solicitations did occur.  *See Johnson v. University of Iowa*, 431 F.3d 325, 329 (8th Cir. 2005).

Title VII's purpose is not to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight.  *See*, *e.g.*, *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998); *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 795 (8th Cir. 2004).  To survive summary judgment, a plaintiff must present evidence from which a reasonable jury could conclude that the harassment was sufficiently "severe or pervasive" to affect a term, condition, or privilege of the plaintiff's employment.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  In judging whether a reasonable jury could find the harassment to be pervasive or severe enough to alter the terms of employment, we look at the frequency with which the purported harassment occurred, its severity, whether it was physically threatening or humiliating, and the extent to which it interfered with the plaintiff's job performance.  *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004).

We conclude that the sexual harassment that Ms. Powell experienced was not so severe or pervasive as to alter the terms of her employment.  In other cases, we have held that conduct more egregious than what is alleged to have occurred here could not support a sexual harassment claim.  For instance, in *Duncan v. General Motors Corp.*, 300 F.3d 928, 931 (8th Cir. 2002), *cert. denied*, 538 U.S. 994 (2003), the plaintiff said that a fellow employee propositioned her for a "relationship."  When she declined, however, the fellow employee began to denigrate the plaintiff by asking her to draw a sexually suggestive illustration for him and by portraying her on a poster as the president of the "Man Hater's Club of America."  *Id.*  Although we found the employee's behavior to be "boorish, chauvinistic, and decidedly immature," we concluded that his conduct was not actionable.  *Id.* at 935.  In this case, Ms. Kreutz made no attempt to belittle or otherwise retaliate against Ms. Powell when she rebuffed the alleged advances.  While good manners should have tempered the ribald

-4-

nature of Yellow Book's office, the conduct that Ms. Powell complains of is simply not sufficient to make out a sexual harassment claim.

B.

Soon after Ms. Powell moved to the cubicle next to hers, Ms. Kreutz experienced a religious conversion. She eschewed drugs and alcohol, ultimately becoming a parishioner at the First Assembly of God. Subsequent to her conversion, Ms. Kreutz began to tell Ms. Powell about her religious beliefs. While Ms. Powell was receptive at first, she later told Ms. Kreutz that she did not wish to discuss any more religious matters.

Ms. Kreutz testified by deposition that she abided by Ms. Powell's wishes. Some months later, however, Ms. Powell complained to Yellow Book management about continued proselytizing by Ms. Kreutz. Yellow Book's manager of corporate employer relations met with Ms. Kreutz and told her that she was not to broach religious matters with Ms. Powell, either in person or through email. Ms. Powell also complained of religious sayings that were posted in Ms. Kreutz's cubicle. Yellow Book management reviewed the sayings, found that they did not violate company policy, and therefore did not order their removal.

Despite Yellow Book's intervention with respect to the proselytizing, Ms. Powell continued to feel aggrieved by Ms. Kreutz's religious outspokenness. Over the course of two months, Ms. Powell complained to Yellow Book management at least eight more times. Each time, according to Yellow Book management, Ms. Powell confirmed that Ms. Kreutz was not talking to her or emailing her about religious matters. But she still felt that the religious messages in Ms. Kreutz's cubicle were inappropriate and distracting. Even when Yellow Book moved Ms. Powell away from Ms. Kreutz's desk so that she would not be next to the religious sayings, Ms. Powell continued to insist that Yellow Book order their removal.

-5-

The district court, after considering this evidence, granted the defendants' motion for summary judgment on the religious harassment claim. "Once an employer becomes aware of [harassing conduct], it must promptly take remedial action which is reasonably calculated to end [it]." *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993). It was undisputed that Yellow Book, upon learning of Ms. Powell's complaints, promptly held a meeting with Ms. Kreutz and told her to stop discussing religious matters with Ms. Powell. As a result, the court held that Yellow Book's actions were prompt and proper. The court also concluded that Yellow Book continued to monitor the situation to ensure that any improper conduct by Ms. Kreutz did not resume.

Like the district court, we conclude that Yellow Book's response to Ms. Powell's complaint was both prompt and reasonable. It is true that Ms. Powell continued to complain to Yellow Book management, but in those complaints she repeatedly confirmed that Ms. Kreutz was no longer discussing religious matters with her and instead focused on Ms. Kreutz's religious postings. An employer, however, has no legal obligation to suppress any and all religious expression merely because it annoys a single employee. In addition to the reason given by the district court, we believe that Ms. Powell's religious-harassment claim also fails because Ms. Kreutz's communications to her about religion did not amount to severe or pervasive harassment that altered the terms of her employment.

C.

After complaining to her supervisors about Ms. Kreutz's proselytizing, Ms. Powell filed a charge of religious harassment with the Iowa Civil Rights Commission. Several weeks after filing this charge, Ms. Powell received a written reprimand for leaving her desk outside of her allotted break time. This was soon followed by another written warning reprimanding Ms. Powell for disruptive behavior in the office. In all, Yellow Book management admonished Ms. Powell three times before her departure.

Ms. Powell contends that these written admonitions were given in retaliation for her filing a complaint with the ICRC. An employer can be held liable under Title VII for discriminating against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." 42 U.S.C. § 2000e-3(a). To make a *prima facie* retaliation claim, a plaintiff must show that he or she engaged in statutorily protected activity and, as a result, suffered an adverse employment action. *Gilooly v. Missouri Dep't of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005). Not every setback amounts to an adverse employment action: instead, an action must give rise to " 'a material employment disadvantage' " that reflects a "tangible change in duties or working conditions." *Baucom v. Holiday Cos.*, 428 F.3d 764, 767 (8th Cir. 2005) (citation and internal quotation marks omitted).

It is obvious that Ms. Powell engaged in protected activity in filing her charge with the ICRC. But, like the district court, we conclude as a matter of law that Ms. Powell suffered no adverse employment action in the wake of her ICRC charge. Although Yellow Book management gave Ms. Powell three written reprimands, she can point to no cut in her pay, no reduction in her hours, nor any other significant change to the conditions of her employment. We have held that formal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action under Title VII. *Spears v. Missouri Dep't of Corrections Human Res*, 210 F.3d 850, 854 (8th Cir. 2000) (en banc). Because there was no material change in Ms. Powell's conditions of employment, her retaliation claim against Yellow Book must fail.

III.

Ms. Powell also named Ms. Kreutz as an individual defendant in her Title VII and ICRA claims. Title VII addresses the conduct of employers only and does not impose liability on co-workers, *see Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994), but it is unclear whether ICRA similarly bars such

individual liability, *cf. Vivian v. Madison*, 601 N.W.2d 872, 878 (Iowa 1999). Assuming, without deciding, that ICRA would permit an action against a non-supervisory co-worker, we conclude that Ms. Powell's ICRA claims against Ms. Kreutz would fail. To prevail on a hostile-environment claim against a co-worker, we think that the Iowa Supreme Court would require a showing that the conduct complained of altered the terms of the plaintiff's employment, just as Iowa requires in actions against employers, *see Lynch v. City of Des Moines*, 454 N.W.2d 827, 833-35 (Iowa 1990). As we have already said, Ms. Powell failed to show that Ms. Kreutz's communications to her regarding sex or religion were severe or pervasive enough to alter the terms of Ms. Powell's employment, and thus we hold that they could not support a claim against Ms. Kreutz. *Cf. id.* Although Ms. Powell also named Ms. Kreutz as a defendant in her retaliation claim, she neither alleged nor proved that Ms. Kreutz retaliated in any way in response to Ms. Powell's protected conduct. *Cf. Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 678 (Iowa 2004). We therefore affirm the grant of summary judgment as to Ms. Powell's Title VII and ICRA claims against Ms. Kreutz.

## IV.

Ms. Powell asserts that Ms. Kreutz also surreptitiously placed drugs in her beverages. As evidence of this claim, Ms. Powell stated that she would often fall asleep at her desk or that she would daydream while driving home from work. On one occasion, Ms. Powell says that she saw Ms. Kreutz (who worked in the adjoining cubicle) near her desk and Ms. Kreutz's hands "up by my drink." Ms. Powell additionally alleges that someone took pens from her desk without her knowledge or permission, looked at her email while she was on break, and retrieved papers from her desk.

Ms. Powell maintains that these actions constitute an invasion of privacy. Iowa law does recognize a cause of action for invasion of privacy that is based on the Restatement of Torts § 652B. *See Lamberto v. Bown*, 326 N.W.2d 305, 309 (Iowa

1982).  This section imposes liability upon a defendant who "intentionally intrudes ... upon the seclusion of another ... if the intrusion would be highly offensive for a reasonable person."  But even if acts such as spiking drinks, stealing pens, taking papers from a desk, and reading someone's email could give rise to a cognizable invasion-of-privacy claim, Ms. Powell did not produce sufficient evidence for a reasonable fact-finder to conclude that Ms. Kreutz did those things.

V.

Ms. Powell additionally complains that Ms. Kreutz tortiously interfered with the contractual relationship between Ms. Powell and Yellow Book by spiking her drink.  Under Iowa law, a plaintiff may recover for tortious interference when a third party intentionally and improperly acts so as to lead to the severance of a contractual relationship.  To succeed on such a claim, Ms. Powell must show that she had a valid contractual relationship with Yellow Book, that Ms. Kreutz knew of that relationship and intentionally and improperly interfered with it, and that as a result Yellow Book breached the contract.  *Grimm v. US West Communications., Inc.*, 644 N.W.2d 8, 12 (Iowa 2002).

The district court granted Ms. Kreutz's motion for summary judgment, holding that a claim for tortious interference could not proceed where the other party to the contract employed the defendant.  While generally an employee can have no claim against his or her employer's agent for interfering with the plaintiff's employment contract, *see Harvit v. Voss Petroleum, Inc.*, 553 N.W.2d 329, 331 (Iowa 1996), we believe that  employees of a contractual party may be liable for tortious interference with that contract when their actions were taken in bad faith and for reasons unrelated to the agency, *see Bossuyt v. Osage Farmers Nat'l Bank*, 360 N.W.2d 769, 778 (Iowa 1985).  Although Ms. Kreutz was Yellow Book's employee, there is scant reason to believe that any drugging that she might have done was for the benefit of Yellow Book.  Thus, Ms. Kreutz might well be considered a third party for the purposes of this claim.

We nevertheless affirm the district court's grant of summary judgment on Ms. Powell's tortious-interference claim. Ms. Powell alleged that Ms. Kreutz tortiously interfered with her employment by spiking her drink. But as we have already concluded with regard to Ms. Powell's invasion-of-privacy claim, there is insufficient evidence from which a reasonable jury could conclude that Ms. Kreutz engaged in the alleged conduct. Ms. Powell therefore cannot prevail on this claim.

Finally, because Ms. Powell's proof that Ms. Kreutz put drugs in her drink is insufficient, her claims for assault and battery also fail as a matter of law.

## VII.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of appellees Ms. Kreutz and Yellow Book.

_____